J-A12044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                              :            PENNSYLVANIA
                              :
            v.                   :
                              :
                              :
JERMAINE M. JACKSON,          :
                              :
            Appellant         :    No. 2707 EDA 2022

Appeal from the PCRA Order Entered October 4, 2022
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0000513-2017

BEFORE: OLSON, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED OCTOBER 4, 2023**

Jermaine M. Jackson appeals *pro se* from the order denying his Post

Conviction Relief Act ("PCRA") petition. **See** 42 Pa.C.S.A. §§ 9541-9546.

Jackson maintains that he is entitled to relief due to ineffectiveness of trial

counsel. We affirm.[1]

A panel of this Court previously summarized the facts as follows:

On February 22, 2017, a grand jury returned an indictment
against [Jackson] for multiple offenses based on his involvement
in a large drug trafficking operation based in Chester County. On
March 10, 2017, the Commonwealth filed an information charging
[Jackson] with one count of [possession with intent to deliver

---

[1] Jackson filed a motion on April 17, 2023, stating he had never received the
Commonwealth's brief and asking for an order requiring it to be sent to him.
The Commonwealth in response stated that its initial attempt at mail service
had been returned for failure to include an inmate number in the address and
that it had re-sent its brief to Jackson, with a complete address including
Jackson's inmate number. Jackson subsequently filed a reply brief, evidently
having received the Commonwealth's brief. We therefore  dismiss his
application to compel as moot.

("PWID")], fifteen counts of criminal use of a communication facility, four counts of dealing in proceeds of unlawful activities, one count of criminal solicitation, one count of corrupt organizations, and four counts of criminal conspiracy. ***See*** Criminal Information, 3/10/17.

On June 4, 2018, the trial court held a pre-trial hearing. [Jackson] was represented [by] Attorney Matthew Miller, Esq. (trial counsel), who was privately retained. At the outset of the hearing, the Commonwealth informed the trial court that the parties had agreed to proceed with a bench trial with stipulated facts. N.T. Hr'g, 6/4/18, at 2-3. Specifically, the Commonwealth explained:

> What we plan to present to your Honor today, is one, [Jackson] would waive his right to a jury trial. In exchange he would also be agreeing to stipulated facts with the Commonwealth which would shorten this basically into a bench trial on certain elements only.
>
> In exchange for [Jackson] agreeing to said [stipulated[2]] facts, the Commonwealth will be withdrawing and proceeding on only a certain number of charges going forward, which would leave your Honor with the stipulations at the end of the day[,] the opportunity to find him guilty or not guilty on only certain counts based on the stipulations[,] and the evidentiary hearing going forward. All tol[d,] the crux of the issue is the controlled substance in play.
>
> As your Honor knows, [this] is a wire case in which no controlled substances were seized from [Jackson] or from his home, *et cetera*. So it is a, for lack of a better term what's called a no dope case. There's no controlled substances involved, so it's all going to be proved through circumstantial evidence, which is what your Honor would base his opinion as to what the substance was.

***Id.*** at 2-3.

Trial counsel stated:

> I agree with what [the Commonwealth] has said. [Jackson] and I have discussed his rights to a trial by jury and all the intended rights. We have gone over the stipulated facts that

---

[2] "Separated" in prior Memorandum and in original transcript.

the Commonwealth typed up and that that we have agreed to. It tracks pretty closely the documentary evidence from what we have seen on the wiretaps. [Jackson] is fully aware of what we are doing in court.

*Id.* at 3-4.

The trial court conducted on-the-record colloquies regarding [Jackson's] decision to waive his right to a jury trial and proceed to a bench trial on the stipulated facts. *Id.* at 4-18. First, the trial court incorporated [Jackson's] written jury waiver colloquy, which he signed and reviewed with trial counsel. *Id[.]*; Written Jury Trial Waiver Colloquy, 6/4/18. Ultimately, the trial court accepted [Jackson's] waiver, finding that he waived his right to a jury "knowingly, intelligently, and voluntarily." *Id.* at 18.

The trial court also conducted a colloquy regarding [Jackson's] decision to accept the terms of the stipulations. [Jackson] stated that he, along with trial counsel, had reviewed and signed the five-page document setting forth the stipulated facts. *Id.* at 19-20. [Jackson] acknowledged that he was waiving his right to cross-examine witnesses on the facts covered by the stipulation. *Id.* at 21-22. [Jackson] also confirmed that, by agreeing to the stipulated facts, the Commonwealth had established a basis for finding [Jackson] guilty of each offense. *Id.* at 22. [Jackson] confirmed that the sole issue of fact to be determined by the trial court was whether [he] possessed marijuana or methamphetamine. *Id.* at 11. At the conclusion of the colloquy, the trial court accepted the stipulation and [Jackson's] waiver of his rights. *Id.* at 23.

The following day, the trial court began the two-day bench trial. The Commonwealth presented Detective Joseph Nangle, a member of the drug and organized crime unit, who testified as [an] expert on PWID offenses and "the code of language used by drug dealers in their investigations of possession with people who are drug dealers." N.T. Trial, 6/5/18, at 24, 32. Detective Nangle stated that, during the course of the investigation, his department conducted multiple controlled buys, implemented visual electronic surveillance, and obtained wiretaps. *Id.* at 46, 49. Detective Nangle stated that, based on the totality of the circumstances, it was his opinion that [Jackson] was dealing methamphetamine, not marijuana. *Id.* at 40-51.

The Commonwealth also presented testimony from Barry Sydenstricker and Michael Zelek, cooperating witnesses who sold

methamphetamine for [Richard] Maitre, who led the drug organization. N.T. Trial, 6/6/18, at 56, 99-100. Zelek testified that he purchased methamphetamine from [Jackson], and that the sale was facilitated by Maitre. *Id.* at 64-65. Sydenstricker testified that [Jackson] gave him a package containing a controlled substance, which he delivered to Maitre. *Id.* at 108. Sydenstricker stated that although he did not see the contents of the package, he believed it was methamphetamine. *Id.* at 108-11. Sydenstricker also testified that after he was arrested, while he was in Chester County Prison with [Jackson, Jackson] instructed Sydenstricker to tell investigators that he transported marijuana, not methamphetamine. *Id.* at 115-125.

On June 15, 2018, the trial court found that the substance possessed and delivered by [Jackson] was methamphetamine. On September 25, 2018, the trial court sentenced [Jackson] to an aggregate term of fifteen to thirty years' incarceration.

*Commonwealth v. Jackson*, No. 347 EDA 2019, 2020 WL 4436293, at *1-3 (Pa.Super. 2020) (unpublished mem.) (some alterations in original; footnotes omitted).

Jackson filed a direct appeal, and we affirmed the judgment of sentence. *See id.* at *1. Jackson filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which was denied on June 2, 2021. *See Commonwealth v. Jackson*, 255 A.3d 1254 (Table) (Pa. 2021).

A few weeks later, in June 2021, Jackson filed a timely, *pro se* PCRA petition. Counsel was appointed and in April 2022, filed a *Finley*[3]/no-merit letter and a petition for leave to withdraw as counsel. The court thereafter issued a Rule 907 notice of intent to dismiss the petition without a hearing. *See* Pa.R.Crim.P. 907(1). Jackson did not file a response to the Rule 907

_____

[3] *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

notice. The court dismissed Jackson's PCRA petition, on October 4, 2022, and granted counsel's petition to withdraw. This appeal followed.

Jackson raises the following issues:

1. Did the trial court err by denying PCRA relief where [Jackson] established by a preponderance of the evidence that he received ineffective assistance of counsel, when counsel failed to object to a defective plea colloquy and protect [Jackson] from being found guilty of crimes he did not commit?

2. Did the trial court err in granting the Commonwealth's Request to Amend the Information, as the Commonwealth added additional charges of possession with the intent to deliver (PWID) and conspiracy?

3. Did the trial court err by denying PCRA relief where [Jackson] established by the preponderance of the evidence that he received ineffective assistance of counsel, where counsel failed to object to the filing of a criminal information without a preliminary hearing?

4. Did the trial court err by denying PCRA relief where [Jackson] established by a preponderance of the evidence that he received ineffective assistance of counsel, when counsel failed to advise [Jackson] of the existence of a possible negotiated plea agreement?

Jackson's Br. at 4.

On appeal from the denial or grant of relief under the PCRA, our review is limited to determining "whether the PCRA court's ruling is supported by the record and free of legal error." *Commonwealth v. Presley*, 193 A.3d 436, 442 (Pa.Super. 2018) (citation omitted).

Jackson first argues that trial counsel was ineffective for failing to object to the trial court's colloquy regarding the stipulated fact trial. Jackson's Br. at 7. He contends that although he was aware that he was waiving his right to a

jury trial, his counsel did not explain that a stipulated trial was the functional equivalent to a guilty plea. *Id.* at 7-8, 10. Jackson maintains that the colloquy was defective because it was "neither voluntary, nor intelligent, where [he] was not apprised of the nature of the charges, nor was he warned of charges running consecutive[ly], his rights against self[-]incrimination, or the maximum sentence of the charges running consecutive[ly]." *Id.* at 6. According to Jackson, counsel's failure to explain the effect of a stipulated trial prejudiced him "by allowing him to admit to crimes that he did not commit." *Id.* at 10.

"[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on [the] appellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa.Super. 2010). To obtain relief based on a claim of ineffectiveness, a petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). Prejudice in this context means that, "absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different." *Commonwealth v. Velazquez*, 216 A.3d 1146, 1149 (Pa.Super. 2019) (citation omitted). A failure to meet any of these prongs bars a petitioner from obtaining relief. *Commonwealth v. Sneed*, 45 A.3d 1096, 1106 (Pa. 2012). Further, "[c]ounsel will not be deemed ineffective for failing to raise a meritless claim." *Commonwealth v. Spotz*, 896 A.2d 1191, 1210 (Pa. 2006).

"A colloquy ensuring a knowing and voluntary decision is required any time a defendant stipulates to evidence that virtually assures his conviction because such a stipulation is functionally the same as a guilty plea." *Commonwealth v. Eichinger*, 108 A.3d 821, 832 (Pa. 2014).

Here, the record belies Jackson's argument that his colloquy was defective. Prior to trial, the following colloquy took place, wherein Jackson voluntarily and knowingly agreed to proceed on a stipulated fact trial in exchange for the Commonwealth withdrawing numerous charges against him:

> THE COURT: . . . Have you had enough time to go over with your attorney, Mr. Miller, this five[-]page document which is entitled stipulated facts[?]
>
> MR . JACKSON: Yes , sir.
>
> THE COURT: Have you -- if you have had questions concerning this, has Mr. Miller answered to your satisfaction any questions that you had concerning the contents of this document?
>
> MR . JACKSON: Yes , sir.
>
> THE COURT: And about the middle of the last page on the line below which the words appear, Jermaine Jackson, the defendant, is the signature on that line above those words, is that your signature?
>
> MR . JACKSON: Yes , sir.
>
> THE COURT: And did you review and sign this earlier today here in the Justice Center building?
>
> MR. JACKSON: Yes, sir.
>
> THE COURT: The critical legal concept that the defendant needs to understand and be aware of prior to what some folks refer to as a stipulated fact trial, and we have here in large part a stipulated fact trial, but we also have reserved for the nonjury trial certain issues to be determined by me as the Judge as fact finder.

But the critical understanding that needs to be established before any stipulated fact trial can proceed is that the defendant is aware, as to those stipulated facts, that he is waiving any right to be able to cross-examine. The Commonwealth will not be calling witnesses as to the stipulated facts , and the defendant is waiving his right to be able to cross-examine through his attorney those witnesses, and there [is] a line of cases in Pennsylvania identifying a stipulated fact procedure.

\*\*\*

So I'll ask you directly, Mr. Jackson, the stipulated facts presentation method means that your lawyer, Mr. Miller, has agreed that those facts may be read into the record without the necessity of witnesses taking the stand. Do you understand that?

MR. JACKSON: Yes, I do, sir.

THE COURT: But that because what we are proceeding through the stipulated fact method or are proposing to, **Mr. Miller will not have the right to cross-examine any Commonwealth witnesses on the facts covered in this stipulation**, and not have the right to develop any facts or theories of his own through cross-examination. Do you understand that?

MR . JACKSON: Yes, I do, sir.

THE COURT: So that you will not have the right or Mr. Miller will not have the right as your attorney to confront any Commonwealth witnesses on these issues as that right is guaranteed to you by the Sixth and Fourteenth Amendments to the United States Constitution.

Do you understand that?

MR . JACKSON: Yes, I do, Judge.

THE COURT: And that in effect **you're agreeing to these stipulated facts means that a basis will have been formed for the Court's finding you guilty with regard to the counts of this information that have been identified by [the Commonwealth]**. Do you understand that?

MR . JACKSON: Yes, I do, sir.

N.T., 6/4/18, at 19-22 (emphasis added).

- 8 -

Thus, the trial court questioned Jackson quite extensively about the effect of a trial based on stipulated facts. This colloquy was sufficient to establish that Jackson fully understood that he was giving up his right to cross-examine witnesses and giving the court a factual basis on which to find him guilty on certain charges. Moreover, on direct appeal, this Court previously determined that the underlying claim was meritless since his decision to proceed on a stipulated fact trial was knowing, intelligent, and voluntary. **See Jackson**, 2020 WL 4436293, at *6. Without a viable underlying objection, there is no basis on which to mount an ineffectiveness claim. **See Spotz**, 896 A.2d at 1210. For like reason – *i.e.*, Jackson's agreement to the stipulated trial was knowing, intelligent, and voluntary – he has failed to show that he would have opted for a different proceeding other than a stipulated trial if trial counsel objected to the colloquy. His first issue fails.

Jackson next argues that the trial court erred in allowing the Commonwealth to amend the information to include the additional charges of PWID and conspiracy. Jackson's Br. at 11. This claim is both not cognizable under the PCRA and waived because Jackson could have raised it on direct appeal but did not. **See Commonwealth v. Spotz**, 18 A.3d 244, 270 (Pa. 2011). In any event, it is meritless. As part of his signed stipulation, Jackson agreed that one count of dealing in proceeds of unlawful activity would be replaced with one count of PWID. **See** Stipulated Facts, 6/4/18, at ¶ 5. Moreover, Jackson orally agreed to the amendment during a colloquy on the record. **See** N.T., 6/4/18, at 9-10.

Jackson next alleges that trial counsel was ineffective for failing to object to Jackson's lack of a preliminary hearing. Jackson's Br. at 12. He contends that "if this case was presented at a preliminary hearing at the time of [his] arrest, this case would have been dismissed." *Id.* at 13.

This claim is also without merit. Jackson has not demonstrated that had a preliminary hearing occurred, this case would have likely had a different outcome. He cites a Common Pleas opinion in an unrelated case stating that the evidence there – also a "no dope case" – was insufficient to survive a preliminary hearing. However, he has not explained why the evidence in this case was inadequate to state a *prima facie* case. Furthermore, once the Commonwealth has established guilt beyond a reasonable doubt at trial – a finding that this Court affirmed on direct appeal – "any defect in the preliminary hearing is rendered immaterial." **Commonwealth v. Sanchez**, 82 A.3d 943, 984 (Pa. 2013). Counsel's failure to require a preliminary hearing cannot support an ineffectiveness claim because the evidence established Jackson's guilt beyond a reasonable doubt at trial. **See Commonwealth v. Lyons**, 568 A.2d 1266, 1268 (Pa.Super. 1989).

Jackson's final claim is that trial counsel was ineffective when he failed to advise Jackson of the existence of a possible negotiated plea agreement. Jackson's Br. at 14. He alleges that counsel never informed him that there was a plea deal offered by the Commonwealth that contained "less charges and less time." **Id.**

To establish that trial counsel was ineffective for failing to communicate a plea offer, a petitioner must plead and prove that: "(1) an offer for a plea was made; (2) trial counsel failed to inform him of such offer; (3) trial counsel had no reasonable basis for failing to inform him of the plea offer; and (4) he was prejudiced thereby." *Commonwealth v. Chazin*, 873 A.2d 732, 735 (Pa.Super. 2005) (citation omitted).

Here, Jackson's claim is conclusory and undeveloped. His brief essentially recites the elements of an ineffectiveness claim without relevant discussion. Nor has he provided any specifics about an alleged plea offer. "[B]oilerplate allegations have never been sufficient to discharge [the] affirmative burden to rebut the presumption of effectiveness" of counsel. *Commonwealth v. Nelson*, No. 3300 EDA 2018, 2020 WL 5797645, at *5 (Pa.Super. Sept. 29, 2020) (unpublished mem.) (quoting *Commonwealth v. Simmons*, 804 A.2d 625, 639 (Pa. 2001) (plurality)). Thus, Jackson's final claim fails.

Order affirmed. Application to Compel dismissed as moot.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: October 4, 2023

- 11 -